In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-476 CR


____________________



CHARLES RAY IRVING, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 128th District Court


Orange County, Texas


Trial Cause No. A000433-R







OPINION


 Charles Ray Irving was found guilty of the aggravated assault of Phyllis Chargois. 
Tex. Pen. Code Ann. § 22.02 (Vernon 2003). A jury sentenced him to four years'
confinement in the Texas Department of Criminal Justice - Institutional Division. 

 Irving presents two issues for our consideration: first, whether the trial court
committed error in refusing to instruct the jury on the lesser included offense of simple
assault; and second, whether the trial court erred in admitting a videotaped interview of
Irving by a law enforcement officer. For the reasons stated herein, we reverse the
judgment and remand the case for a new trial.

 Chargois and Irving had known each other for nearly twenty years; they had lived
together on at least two separate occasions; and at the time of the alleged assault they had
not lived together for the preceding four months. Chargois testified that Irving followed
her from work on the evening of August 3, 2000, to an establishment frequented by
Chargois. She left the establishment and drove to her sister's house in Louisiana, where
she spent the night. Chargois returned home the next morning, and encountered Irving in
her home. She testified that Irving was holding a bat, that he told her "not to try and run,"
and that it was her day to die; that Irving then struck her several times with the bat; and
that she suffered broken bones in her leg, ankle, and arm. She further testified that she
fell against a glass shelf, breaking the glass and cutting herself. Irving went to get a towel
for Chargois to help stop the bleeding, and Chargois crawled out her front door, calling
for help. A neighbor, Tommy Conway, helped her across the street to his front yard. 

 Conway testified that he had heard a loud noise coming from Chargois' house. He
went to investigate, and saw Irving with his arms around Chargois' head. It looked to
Conway as if Irving was "fixing to twist her head off." Conway shouted at Irving, who
then let Chargois drop to the ground.

 Bridge City Police Officer Shannon Meaux was sent to the scene, and he observed
Chargois on Conway's property, with blood and a painful expression on her face. Meaux
saw that Irving had blood on his face, arms and legs. Meaux conducted a videotaped
interview with Irving, in which Irving is given his Miranda rights, and then gives a brief
statement concerning the incident. The bat allegedly used in the assault was never found. 
 Dr. Wesley Palmer treated Chargois at Park Place Hospital. He testified that
Chargois had broken bones in her left arm and leg, injuries to her left hip and thigh, and
a laceration to the back of her head. The fractured arm required pins be inserted into the
arm, as well as a cast. Dr. Palmer was familiar with the legal definition of "serious bodily
injury" and was of the opinion that Chargois suffered such injuries. Chargois told Dr.
Palmer that her ex-boyfriend hit her with a bat. Dr. Palmer testified that the injuries
Chargois suffered could have been caused by hitting her with a bat. He also testified that
the individual injuries were consistent with a fall on a cement floor, although the number
of injuries would have required multiple falls. 

 Irving testified on his behalf. He and Chargois had an on-again/off-again
relationship; he lived with her for about nine of the years they knew each other. He denied
he was in Beaumont on the day Chargois testified that he followed her as she left her job. 
He acknowledged going to her house on August 3, testifying that he still had a key to her
house. He went to the house to remove some clothing which was still there, and he spent
the night at the house. He understood he was to meet her there, but she never arrived. 
On that day he went in and out of Chargois' house. The next morning he backed his car
into her garage to load up his things. After loading, he went back inside the house, where
he saw Chargois. Irving testified that when he encountered Chargois in the house, she
began cursing him. He denied that he told her it was her day to die. He testified he
picked up a bat that was there in her house, but further testified that he threw the bat down
and then placed his arms around Chargois. They began to struggle and bumped into glass
shelves which fell and broke. Chargois fell on top of the glass and he fell on top of her. 
Irving noticed blood on the side of Chargois' neck, so he got a towel to help stop the
bleeding. He heard the door slam and thought Chargois had left. When he went outside,
he saw her lying on the concrete walkway. He attributed Chargois' serious injuries to a
fall. He denied "physically abusing" Chargois. Irving attributed the differences between
his in-court testimony and the statements made in the presence of the arresting officer to
his nervousness at being arrested. He acknowledged that a bat could be a deadly weapon. 

 In his first issue, Irving contends the trial court committed reversible error in
refusing his requested charge on the lesser included offense of simple assault. In
determining whether a charge on a lesser-included offense should be given, the reviewing
court must first determine whether the offense for which the instruction is requested is a
lesser-included offense of the offense charged. Mathis v. State, 67 S.W.3d 918, 925 (Tex.
Crim. App. 2002). If it is, the court must then evaluate the evidence to determine if a jury
could rationally acquit the defendant of the greater offense while convicting him of the
lesser-included offense. Id. "The evidence must establish the lesser-included offense as
a valid rational alternative to the charged offense." Id. All evidence, whether produced
by the State or the defendant, must be considered. Sibley v. State, 956 S.W.2d 832, 835
(Tex. App.--Beaumont 1997, no pet.). The credibility of the evidence, or whether it
conflicts with other evidence, is not considered. Id. 

 The State does not contest that simple assault is a lesser-included offense of
aggravated assault. It has long been so recognized. Foster v. State, 25 Tex. Ct. App.
427, 543, 8 S.W. 664, 665 (1888). However, it is the State's position that there is no
evidence from which a rational jury could determine that Irving was guilty of the lesser
offense of simple assault. 

 "Aggravated assault" consists of the commission of an assault as defined in Penal
Code Section 22.01, plus the additional element of either: (1) causes serious bodily injury
to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during
the commission of the assault. Tex. Pen. Code Ann. § 22.02(a) (Vernon 2003). The
indictment charged aggravated assault through both means. The jury charge also contained
both means. "Assault" is committed if the person: "(1) intentionally, knowingly, or
recklessly causes bodily injury to another, including the person's spouse; (2) intentionally
or knowingly threatens another with imminent bodily injury, including the person's spouse;
or (3) intentionally or knowingly causes physical contact with another when the person
knows or should reasonably believe that the other will regard the contact as offensive or
provocative." Tex. Pen. Code Ann. § 22.01(a)(1), (2), and (3) (Vernon 2003). 

 Without regard to whether it is credible or conflicting, we note the following
evidence. Tommy Conway testified he observed Irving holding Chargois around the head,
like he was going to "twist her head off." Conway further testified he heard Chargois
calling for help. Irving testified that although he initially picked up a bat, he discarded it
before wrapping his arms around Chargois, holding her and struggling with her. Such
grabbing and holding would constitute "intentional( ) or knowing( ) . . . physical contact
with another." Wal-Mart Stores, Inc. v. Cockrell, 61 S.W.3d 774, 779 (Tex. App.--Corpus Christi 2001, no pet.). See also Stokes v. Puckett, 972 S.W.2d 921, 925 (Tex.
App.--Beaumont 1998, pet. denied). (1) Testimony that Chargois called for help would
constitute evidence that she regarded appellant's contact with her as offensive. Irving
testified that, after their struggle, Chargois did not state she was hurt, she was not limping,
and she walked into the kitchen, got a soda from the refrigerator, and sat down on the end
of the cedar chest, continuing to talk to him. Irving also testified that he observed
Chargois lying on the concrete walkway outside, and he attributed her serious injuries to
this fall. The State's medical expert conceded that Chargois' injuries could have been the
result of falling on the concrete outside and falling on the bat inside. We hold that there
is evidence which, if believed by the trier of fact, would constitute evidence of simple
assault. 

 Because simple assault was, under the cited evidence, a marginally valid rational
alternative to the aggravated assault charge, the trial court erred by failing to instruct the
jury on this lesser included offense. This error in jury instruction requires that we perform
a harm analysis. See Hampton v. State, 109 S.W.3d 437, 442 (Tex. Crim. App. 2003), 
and Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Since the error was
properly objected to, supra, we need examine only whether there was some harm to the
accused. Almanza at 171. Given that the minimum sentence for aggravated assault is
greater than the maximum possible punishment for simple assault, we find obvious harm. 
Issue one is sustained. 

 Because of our disposition of issue one, we need not address the second issue. The
judgment is reversed, and the case is remanded to the trial court for a new trial. 

 REVERSED AND REMANDED.




 ____________________________

 STEVE MCKEITHEN

 Chief Justice 


Submitted on October 24, 2003

Opinion Delivered November 19, 2003

Do Not Publish 


Before McKeithen, C.J., Burgess and Gaultney, JJ.


DISSENTING OPINION



 I respectfully dissent. Irving testified the victim's injuries resulted from an accident
-- incredible testimony, given the nature and extent of her serious bodily injuries. But of
course the legal issue is not the credibility of his testimony but rather whether his
testimony required submission of the lesser-included offense of assault. 

 There is no dispute the victim suffered serious bodily injuries. If Irving assaulted
her, the assault was aggravated assault, because the assault caused serious bodily injuries. 
See Tex. Pen. Code Ann. § 22.02(a)(1) (Vernon 2003). Submission of the lesser-included
offense under these circumstances would have been an improper "invitation to the jury to
reach an irrational verdict." See Arevalo v. State, 943 S.W.2d 887, 890 (Tex. Crim. App.
1997). 

 But Irving's testimony was that her injuries were the result of an accident, not an
assault. Irving testified: "I never assaulted her." "That was an accident." "I never
attacked her." In Lofton v. State, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001), the Court
of Criminal Appeals held "[a] defendant's own testimony that he committed no offense,
or testimony which otherwise shows that no offense occurred at all, is not adequate to raise
the issue of a lesser-included offense." Irving testified he committed no offense. 
Considering Lofton and Arevalo, I would hold the trial judge did not err in refusing to
instruct the jury on the lesser-included offense of assault.


 ____________________________________

 DAVID B. GAULTNEY

 Justice


Dissent Delivered

November 19, 2003

Do Not Publish
1. The definition of assault is the same in both civil and criminal law. Stokes v.
Puckett, 972 S.W.2d at 925. See also Green v. Indus. Specialty Contractors, Inc., 1
S.W.3d 126, 134 (Tex. App.--Houston [1st Dist.] 1999, no pet.); Lusk v. State, 432
S.W.2d 923, 924 (Tex. Crim. App. 1968)(Defendant put his hand on victim's arm; the
least touching of another's person wilfully is a battery and every battery includes an
assault).